UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 1:21-cr-605(2) (RC) |
| | : |
| AARON JAMES, ROBERT | : |
| WESTBURY, JONAH WESTBURY, | : |
| And ISAAC WESTBURY, | : |
| Defendants. | : |

### DEFENDANTS ROBERT WESTBURY, JONAH WESTBURY, AARON JAMES and ISAAC WESTBURY'S **MOTION IN LIMINE TO PRECLUDE THE GOVERNMENT'S UNCONSTITUTIONAL "RAINDROP THEORY" OF COLLECTIVE GUILT**

COMES NOW, the Defendants, by and through his counsel of record John Pierce, with this motion in limine to preclude from trial any evidence, discussion, or argument regarding the government's "raindrop theory" of collective liability.  Such a concept is anathema to constitutional due process of law, and wholly alien from the Federal Rules of Evidence.

Under the Constitution, a defendant may be punished <u>only for crimes she herself committed</u>; and not for crimes by a "mob" or for merely being a witness to acts of other people.

Defendants hereby file this motion in limine to preclude evidence, discussion, or argument of the government's "raindrop theory" that a Jan. 6 defendant can be guilty of federal crimes such as "obstruction of an official proceeding," "disorderly conduct" or "picketing and

parading" for merely standing or walking inside the Capitol. This theory has no support in Supreme Court or Circuit Court case law[1] and is wholly alien to due process of law.

The criminal law in the United States requires that to prove a person guilty of a crime, prosecutors must prove the individual guilt of that particular Defendant. Guilt of a crime is not transferable from one person to another. You may not consider evidence that someone else committed a crime to impute or transfer guilt to another Defendant.

> In general, the criminal law in the United States does not provide for collectivist or group criminal liability. We do not convict crowds or mobs or groups. Being near a crowd or mob or group or even joining a mob or a crowd is not a crime in itself, unless as stated above the prosecution proves a conscious conspiracy.
>
> It is possible for everyone in a crowd to individually be guilty. But that guilt must be proven individually with respect to each of them in particular. You may not merely assume people are guilty because other people are guilty.
>
> Being in the vicinity of a crime committed by someone else is not a crime. A Defendant cannot be found guilty merely as a result of seeing someone else committing a crime. A Defendant cannot be found guilty merely as a result of being near someone else committing a crime. Watching someone commit a crime is not a crime. There is no duty to leave an area only because of seeing a crime being committed, although obviously there could be other things happening such as if police ordered an area to be cleared. One could stand across the street from a bank robbery and film it on a smart phone. However, police might decide that the area is not safe and ask people to back up. But watching a crime is not a crime.

**Florida's Anti-Riot Act was Immediately Struck Down**

Florida's controversial anti-riot law—framed identically to conceptual notions of collective guilt propounded by federal prosecutors in Jan. 6 cases—was quickly struck down by the first courts to address it.

In the wake of the George Floyd riots of 2020, Florida Governor Ron Desantis and the Florida legislature enacted HB 1, an "anti-riot" statute structured almost identically to match

---

[1] Sadly, it seems a couple of district courts in January 6 cases have recently adopted the government's theory in order to convict Jan. 6ers of crimes they merely witnessed, or for mere presence near or in the Capitol on January 6.

arguments of the United States in Jan. 6 cases.  "Civil rights groups including the ACLU of Florida, the Dream Defenders and the Black Collective" immediately sued, alleging HB 1, the law called "Combating Public Disorder," specifically targets Black people, infringes on Floridians' First Amendment rights and "deters and punishes peaceful protests." See [What to know about Florida's anti-riot law and the corresponding legal challenge - ABC News (go.com)](#)

The Florida "Combating Public Disorder" Act featured <u>all the collective guilt liability notions that are now part of the government's "raindrop theory"</u> in January 6 cases.  See "Florida Adopts Nation's Toughest Restrictions On Protests," NPR, April 19, 2021 [https://www.npr.org/2021/04/19/988791175/florida-adopts-nations-toughest-restrictions-on-protests](https://www.npr.org/2021/04/19/988791175/florida-adopts-nations-toughest-restrictions-on-protests)  ("Florida's governor has signed a law that he called the "strongest anti-rioting, pro-law enforcement measure in the country." "It creates a new crime, "mob intimidation." And it requires that anyone arrested at a protest be denied bail until their first court appearance, likely making for overnight jail stays.").

Almost immediately, U.S. District Judge Walker struck down the new law, pronouncing it fundamentally unconstitutional.

> This is where things fall apart. Although both Governor DeSantis and Sheriff Williams argue that the phrase "willfully participate" is commonly understood, neither party offers an actual definition. Is it enough to stand passively near violence? What if you continue protesting when violence erupts? What if that protest merely involves standing with a sign while others fight around you? Does it depend on whether your sign expresses a message that is pro- or anti-law enforcement? What about filming the violence? What if you are in the process of leaving the disturbance and give a rioter a bottle of water to wash tear gas from their eyes?
>
> The Governor would have this Court pencil in an exception for a person who merely "attend[s]" a violent demonstration but does not actively engage in violence or conduct that poses an imminent risk of injury or property damage. ECF No. 99 at 13. But the Governor offers no explanation or construction that limits when mere attendance becomes

> participation, except that a person must "intend to commit violence." Id. But this ignores the plain text of the statute, which separates a person from an assembly of three or more persons sharing that intent. See *infra*.

*See, The Dream Defenders, et al., v. Ron DeSantis, 21-cv-191, ECF No. 137 (N.D. Fla. Sept. 9, 2021), (Mark E. Walker, Chief United States District Judge),* Page 53 *(injunction against anti-riot law in part because the legislation appeared to criminalize the defendant's protest activities even if he did not participate in the violent acts of others).*

The State of Florida has appealed the District Court order. And interestingly, the Biden Justice Department has joined ***the plaintiffs*** as amicus curiae, arguing that there is a high probability that Desantis' anti-riot law is, in fact, unconstitutional. See Dream Defenders v. DeSantis, No. 21-13489 (11th Cir. Feb. 3, 2023) Brief for the United States as Amicus Curiae p. 7-8 (saying "In defendants' [State of Florida's] view, the statute is properly limited to those who engage in or aid or abet violence because its two intent elements work together and both apply to the criminally accused. In plaintiffs' [Dream Defenders, ACLU, etc.] view, the Legislature's decision to add new phrasing to the common-law definition of "riot" indicates that [the new act] reaches more persons than its predecessor statute and sweeps in the constitutionally protected activity of nonviolent demonstrators who are part of an assembly that turns violent.").

The Biden Justice Department has suggested that, although the Florida "Combatting Civil Disorder Act" should first undergo review in the Florida Supreme Court, the Act would likely fail such constitutional review and would also likely fail ultimate review before *federal* appellate courts. In any case, the U.S. Justice Department argues, the Act's individual-liability-for-a-mob's-behavior notions should continue to be enjoined.

The case is still on pending before the 11th Circuit.

It appears that, in the context of January 6 cases, Biden Justice Department prosecutors (and sadly, a handful of U.S. district judges presiding in January 6 cases) have changed their

position and all prior assessments of individual rights during social disorders. Here, and only here, the government is arguing that any person or citizen who dares to participate in a First-Amendment protest or demonstration is acting as an illegal "raindrop" and can therefore by convicted of crimes based upon the "flood" of others who commit crimes during a riot.

## CONCLUSION

It is unconstitutional and illegal to prosecute or punish anyone under a collectivist theory. One cannot be prosecuted for being part of a crowd, for being near a crime, witnessing a crime as an observer or bystander, or for guilt by association.

For all the above-stated reasons, this Court should issue an order in limine:

1) Prohibiting and precluding the government from telling or arguing to the jury that a person can be criminally liable for the crimes of a mob, for merely standing or peacefully assembling or walking in a location.

2) Prohibiting and precluding the government from telling or arguing to the jury that a person can be convicted of the crimes alleged in this case by merely witnessing acts of others, or standing or walking in a given place.

3) Prohibiting and precluding the government from arguing that an individual who is merely present can be convicted as a "raindrop" amid a rainstorm of others who cause violence or disruption of events.

The Government must prove individual actions by individual Defendants through evidence particularized to that specific Defendant. Collectivism has an intellectual home, but it is not in the United States.

1) Defendant had already left the vicinity of the crowd, leaving before and earlier in time than what the Government accuses "the crowd" of doing, or

2) it is impossible to understand within the precision required by criminal prosecution to the standard of a presumption of innocence until proven guilty by a court of law as to each and every element of a charged crime what qualifies as being "part of" a crowd. In the precision required for a criminal prosecution, does being "part of" a crowd mean that

    (a) one submits a formal application in writing to become "part of" the crowd?

    (b) one is about half a mile (2,640 feet) away from the crowd?  How far away does one have to be to be "part of" the crowd?

    (c) one is within 100 feet of the center of gravity (center of population) of the crowd?

    (d) one must know what the crowd is and what the crowd is doing?

(e) one is reporting on what is happening and not a participant, whether a formal traditional journalist or a citizen journalist?

(f) the government must define exactly what "the crowd" is or was?

(h) one who disagrees with what the rest of the crowd is doing is guilty of what other people did that he or she found repugnant?

What does being "part of" a crowd mean if the Government has no individualized evidence unique and particularized to an individual Defendant of what that Defendant personally did or failed to do without reference to anyone else?

It is not a crime to join a crowd, nor to watch a crowd as a bystander or observer. Being part of a crowd is not chargeable as a crime.

But before reaching the constitutional, due process, and unlawful nature of these prosecution arguments, we must start with the factual foundation of whether January 6 Defendants were even present at the time, whether they actually were "part of a crowd" or had not yet arrived in the area or they had already left the area.

Some statements, claims, arguments, or evidence are worse than simply being unfairly prejudicial or lacking probative value. Some objectionable assertions are downright dishonest. To knowingly, intentionally, specifically deceive the jury is lacking in candor to the tribunal.

I. **COLLECTIVIST PUNISHMENT IS UNCONSTITUTIONAL**

Security camera video – that is, the Government's own evidence – shows with unmistakable clarity and precision that most of those who intruded into the U.S. Capitol building clearly had no plans whatsoever, no sense of direction, no commonality, etc.[2] Even if it upsets

---

[2] *See,* Capitol Security camera video, produced by USAO as 7029 USCS 02 Rotunda Door Interior-2021-01-06_15h15min01s000ms.mp4 from USCP OPR Report 21-007, Exhibit 6 CCTV

people to have their preconceived ideas challenged, all evidence available overwhelmingly shows nearly all pro-Trump demonstrators on January 6, 2021, simply milling around aimlessly.

Many thought to have some mission instead wandered aimlessly on the grounds or in the Capitol building, failed to stay together as a group, left in a very short time, and exited at random times in random directions through different exits from one another. One cannot intend to take over the U.S. Government or stop the count of Electoral College votes in as little as 9 minutes (for many people shown on security video less than 20 seconds) or perhaps 18 to 20 minutes before exiting the building. The time lines are incompatible with the Government's allegations of what prosecutors imagine to have been in demonstrator's minds.

Thus, with a few exceptions the vast majority of demonstrators clearly and unmistakably demonstrate a complete lack of any intention, plan, mission, or purpose.

Crowds do not do things. Individuals do things. Crowds do not.

> This is where things fall apart. Although both Governor DeSantis and Sheriff Williams argue that the phrase "willfully participate" is commonly understood, neither party offers an actual definition. Is it enough to stand passively near violence? What if you continue protesting when violence erupts? What if that protest merely involves standing with a sign while others fight around you? Does it depend on whether your sign expresses a message that is pro- or anti-law enforcement? What about filming the violence? What if you are in the process of leaving the disturbance and give a rioter a bottle of water to wash tear gas from their eyes?
>
> The Governor would have this Court pencil in an exception for a person who merely "attend[s]" a violent demonstration but does not actively engage in violence or conduct that poses an imminent risk of injury or property damage. ECF No. 99 at 13. But the Governor offers no explanation or construction that limits when mere attendance becomes participation, except that a person must "intend to commit violence." Id. But this ignores the plain text of the statute, which separates a person from an assembly of three or more persons sharing that intent. See *infra*.

---

Recordings, from production DT_DocID: USCP-003-00000167, produced 11/18/2021, in Global Production DOJCB_008

*See, The Dream Defenders, et al., v. Ron DeSantis,* 21-cv-191, ECF No. 137 (N.D. Fla. Sept. 9, 2021), (Mark E. Walker, Chief United States District Judge), Page 53 *(injunction against anti-riot law in part because the legislation appeared to criminalize the defendant's protest activities even if he did not participate in the violent acts of others)*, attached as **Exhibit**.  And continuing:

> If this Court does not enjoin the statute's enforcement, ***the lawless actions of a few rogue individuals could effectively criminalize the protected speech of hundreds, if not thousands, of law-abiding Floridians***. This violates the First Amendment. See, e.g., *Bible Believers v. Wayne Cnty.*, Mich., 805 F.3d 228, 252 (6th Cir. 2015). Florida's interest in preventing public violence is beyond question, but when that interest collides with rights guaranteed by the First Amendment, the "government may regulate in the area only with narrow specificity." *Button*, 371 U.S. at 433. Otherwise, those rights, which "are delicate and vulnerable, as well as supremely precious in our society," may be suffocated. Id. Section 870.01(2), through its ambiguity, chills speech and eviscerates that essential breathing space. The law is overbroad.[27]
>
> Accordingly, I conclude that Plaintiffs have established a substantial likelihood of success on the merits as to their overbreadth claim.

*Id.,* at Page 77 *(emphases added).*

"It is well-established that the determination of probable cause must be an individualized matter." *Carr v. District of Columbia*, 565 F. Supp. 2d 94, 99 (D.C. Cir. 2009). See also *Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006). "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another ...." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 (1979). "To demonstrate that plaintiffs' arrests were valid, therefore, the District must show that it had probable cause to arrest each individual . . ." *Carr*, 565 F. Supp. 2d at 99.

**"The fact that rioting is a group offense does not eliminate the constitutional requirement of particularized suspicion of guilt."** *Id. (emphasis added).*  This is true even if the "mob" has a generalized characterization of criminal behavior. *Carr*, supra, at 99.   Mr.

Rivera cannot be prosecuted merely for associating with them. See *Washington Mobilization Committee v. Cullinane*, 566 F.2d 107 (D.C. Cir. 1977); *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977); *Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006); *Carr*, at 101.

Collectivist punishment is not permitted nor constitutional within U.S. criminal law. With rare exceptions inapplicable here (such as hiring someone to commit a criminal act), no person under the U.S. Constitution may be convicted or sentenced for what other people did.

## II.  CONCLUSION

The Court should order that the prosecution not be allowed to deceive if not confuse the jury with any claim, argument, or purported evidence of the Defendant being "part of" "a crowd" when the Defendant was not actually "there" (in the vicinity of the allegedly, poorly-defined referenced "crowd"). At any time or place where the Defendant was actually not present, it would be not merely lacking in probative value and unduly prejudicial but actively deceitful to claim that Defendant was "part of a crowd" at times, places, or during events when he was not even there at all.

Before the Defendant arrived, after Defendant had already left, or at places where Defendant was never present cannot be allowed to be argued as Defendant being part of a crowd.

November 6, 2023                                **RESPECTFULLY SUBMITTED,**

John M. Pierce, Esq.
*Counsel for Defendant*

_____/s/ John Pierce_____

JOHN PIERCE LAW
21550 Oxnard Street 3rd Floor, PMB #172
Woodland Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7846

## **CERTIFICATE OF SERVICE**

     I hereby certify that my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

                                     */s/ John Pierce*
                                     John M. Pierce